**FILED**
July 30, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: MRC
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| BRANDON CALLIER,<br><br>Plaintiff,<br><br>v.<br><br>SELECT HOME WARRANTY LLC,<br>a New Jersey Limited Liability Company,<br><br>Defendant. | Civil Action No. EP-26-CV-00879-DCG |

## DEFENDANT SELECT HOME WARRANTY LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S ORIGINAL COMPLAINT

Defendant **Select Home Warranty LLC** ("Defendant" or "SHW"), by and through undersigned counsel, hereby answers Plaintiff Brandon Callier's ("Plaintiff") Original Complaint ("Complaint") and asserts its affirmative defenses as follows. Unless expressly admitted herein, Defendant denies each and every allegation of the Complaint. Defendant reserves the right to amend this Answer as additional facts are developed through discovery.

## PARTIES

**1.** *Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, resident of the Western District of Texas, and was present in El Paso County, Texas, for all texts in this case.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 regarding Plaintiff's residency and location, and on that basis requires strict proof thereof. All remaining allegations and inferences are otherwise denied.

**2.** *Defendant SELECT HOME WARRANTY LLC ("Select Home") is a limited liability company organized and existing under the laws of New Jersey and can be served via its registered agent, Vcorp Agent Services, Inc., 820 Bear Tavern Road, West Trenton, New Jersey 08628.*

**ANSWER:** Defendant admits that Select Home Warranty LLC is a limited liability company organized under the laws of New Jersey and that it may be served through its registered agent at the address stated. All remaining allegations and inferences are otherwise denied.

## JURISDICTION AND VENUE

**3.** *This Court has subject matter jurisdiction over Count I under 28 U.S.C. § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227.*

**ANSWER:** Defendant admits that Plaintiff purports to bring a claim under 47 U.S.C. § 227, and that such claims may confer federal question jurisdiction, but denies that Plaintiff's claims are meritorious and denies any violation of the TCPA. All remaining allegations and inferences are otherwise denied.

**4.** *The Court has pendant jurisdiction over the Texas Business and Commerce Code claims under 28 U.S.C. § 1367.*

**ANSWER:** Defendant admits the Court may exercise supplemental jurisdiction over state law claims if a valid federal claim exists but denies that Plaintiff has valid claims under any statute and denies any violation of the Texas Business and Commerce Code. All remaining allegations and inferences are otherwise denied.

**5.** *This Court has specific personal jurisdiction over Defendant because Defendant purposefully availed itself of the State of Texas and of this District, and there is a sufficient relationship between Defendants' purposeful contacts with Texas and the litigation, including (a) targeting Texas for marketing home warranty services; (b) sending phone calls to Plaintiff's El Paso area phone number; and (c) that such calls injured Plaintiff in Texas.*

**ANSWER:** Defendant admits that it engages home warranty services for policy holders in Texas and that in this instance calls were placed to a telephone number with an area code associated with El Paso, Texas subject to the Plaintiff's online request that included expressed written consent and the Plaintiff's personal email and telephone number. Defendant admits that it responds back to consumers in Texas who inquire through its website based in New Jersey when such consumers complete a web form for quotes and promotions. Defendant denies that any calls subject to submission of policy quote request by the Plaintiff, and his associated prior written consent to be contacted, were unlawful, denies that Plaintiff suffered cognizable injury, and denies the remaining allegations of Paragraph 5 to the extent they imply unlawful or unauthorized conduct. All remaining allegations and inferences are otherwise denied.

**6.** *Venue is proper under 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims occurred in this District and because the Plaintiff resides in this District.*

**ANSWER:** Defendant does not contest venue in this District for purposes of this action.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

**7.** *In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers en masse.*

**ANSWER:** Paragraph 7 states a legal characterization of Congressional action and legislative history to which no response is required. To the extent a response is required, Defendant admits that Congress enacted the TCPA in 1991, it is related to specific telemarketing activity defined under the statute as interpreted by the courts, and refers the Court to the legislative record for its full content. All remaining allegations and inferences are otherwise denied.

**8.** *The TCPA makes it unlawful 'to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service.' 47 U.S.C. § 227(b)(1)(A)(iii).*

**ANSWER:** Paragraph 8 states a legal conclusion quoting a federal statute to which no response is required. Defendant refers the Court to the statute for its full and accurate text. All remaining allegations and inferences are otherwise denied.

**9.** *The TCPA makes it unlawful 'to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes.' 47 U.S.C. § 227(b)(1)(B).*

**ANSWER:** Paragraph 9 states a legal conclusion quoting a federal statute to which no response is required. Defendant refers the Court to the statute for its full and accurate text. All remaining allegations and inferences are otherwise denied.

**10.** *The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).*

**ANSWER:** Paragraph 10 states a legal conclusion to which no response is required. Defendant refers the Court to the statute for its full and accurate text. All remaining allegations and inferences are otherwise denied.

**11.** *Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).*

**ANSWER:** Paragraph 11 states a legal conclusion to which no response is required. Defendant refers the Court to the statute and regulations for their full and accurate text. All remaining allegations and inferences are otherwise denied.

**12.** *The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).*

**ANSWER:** Paragraph 12 states a legal conclusion to which no response is required. Defendant refers the Court to the statute for its full and accurate text. All remaining allegations and inferences are otherwise denied.

**13.** *The FCC recognizes that 'wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.'*

**ANSWER:** Paragraph 13 states a legal conclusion quoting the FCC without reference or context as to its applicability post *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) or if it is prevailing with the FCC, therefore no response is required. Defendant refers the Court to the FCC record for its full and accurate text and context. All remaining allegations and inferences are otherwise denied.

**14.** *The FCC requires 'prior express consent' for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines, including written consent signed by the consumer showing clear and conspicuous disclosure and unambiguous agreement.*

**ANSWER:** Paragraph 14 states a legal conclusion regarding FCC regulations and orders to which no response is required. Defendant refers the Court to the cited FCC orders for their full and accurate text. Defendant affirmatively states that prior express consent was obtained in this matter through Plaintiff's webform submission.

**15.** *FCC regulations 'generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations.'*

**ANSWER:** Paragraph 15 states a legal conclusion regarding an FCC ruling to which no response is required. Defendant refers the Court to the cited FCC order for its full and accurate text, and denies any violation occurred.

**16.** *The FCC confirmed that 'a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers.'*

**ANSWER:** Paragraph 16 states a legal conclusion regarding an FCC ruling to which no response is required. Defendant refers the Court to the cited FCC order for its full and accurate text. Defendant denies any violation occurred and denies any applicable vicarious liability on these facts. All remaining allegations and inferences are otherwise denied.

**17.** *Under the TCPA, a text message is a call.*

**ANSWER:** Paragraph 17 states a legal conclusion to which no response is required. Defendant refers the Court to the statute and cited case law. Defendant does not contest that text messages in some circuits may constitute 'calls' for purposes of certain TCPA provisions, however the circuits are split, and in some instances the districts within the same circuit are split.

**18.** *A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA.*

**ANSWER:** Paragraph 18 states a legal conclusion to which no response is required. Defendant refers the Court to cited case law. Defendant denies that any individual officer is a party to this action and denies any factual basis for individual liability on these facts. All remaining allegations and inferences are otherwise denied.

## TEXAS BUSINESS AND COMMERCE CODE CHAPTER 302

**19.** *"Telephone call" has the meaning assigned by Section 304.002. TBCC § 302.001(6-a).*

**ANSWER:** Paragraph 19 states a legal conclusion quoting a Texas statute to which no response is required. Defendant refers the Court to the statute for its full and accurate text and interpretation. All remaining allegations and inferences are otherwise denied.

**20.** *"Telephone solicitation" means a call or transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item. Tex. Bus. & Com. Code § 302.001(7).*

**ANSWER:** Paragraph 20 states a legal conclusion quoting a Texas statute to which no response is required. Defendant refers the Court to the statute for its full and accurate text and prevailing

interpretation by the courts, and specifically notes the operative term 'initiated by a seller or salesperson.' All remaining allegations and inferences are otherwise denied.

**21.** *An 'item' is defined as a property or service. Tex. Bus. & Com. Code § 302.001(1).*

**ANSWER:** Paragraph 21 states a legal conclusion to which no response is required. Defendant refers the Court to the statute text and prevailing interpretation by the courts. All remaining allegations and inferences are otherwise denied.

**22.** *A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation. Tex. Bus. & Com. Code § 302.002.*

**ANSWER:** Paragraph 22 states a legal conclusion to which no response is required. Defendant refers the Court to the statute text and prevailing interpretation by the courts. All remaining allegations and inferences are otherwise denied.

**23.** *A 'seller' is defined as 'A person who makes a telephone solicitation on the person's on behalf.' Tex. Bus. & Com. Code §302.001(5).*

**ANSWER:** Paragraph 23 states a legal conclusion to which no response is required. Defendant refers the Court to the statute and prevailing interpretation by the courts. All remaining allegations and inferences are otherwise denied.

**24.** *A 'salesperson' is defined as 'A person who is employed or authorized by a seller to make a telephone solicitation.' Tex. Bus. & Com. Code §302.001(4).*

**ANSWER:** Paragraph 24 states a legal conclusion to which no response is required. Defendant refers the Court to the statute and prevailing interpretation by the courts. All remaining allegations and inferences are otherwise denied.

**25.** *A person commits an offense if the person knowingly acts as a salesperson on behalf of a seller who violates the registration requirements of this chapter. Tex. Bus. & Com. Code §302.252(a).*

**ANSWER:** Paragraph 25 states a part of a statute with a legal conclusion to which no response is required. Defendant refers the Court to the statute and denies any violation of Chapter 302's registration requirements as alleged. All remaining allegations and inferences are otherwise denied.

**26.** *When a telephone solicitation is made and before consummation of any sales transaction, a seller shall provide to each purchaser the complete street address of the location from which the salesperson is calling the purchaser. TBCC § 302.202(1).*

**ANSWER:** Paragraph 26 states a legal conclusion to which no response is required. Defendant refers the Court to the statute and prevailing interpretation by the courts. All remaining allegations and inferences are otherwise denied.

**27.** *The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. TBCC § 302.003(b).*

**ANSWER:** Paragraph 27 states a legal conclusion to which no response is required. Defendant refers the Court to the statute and prevailing interpretation by the courts. Defendant affirmatively

notes that this allegation implies Plaintiff has previously recovered in similar actions, which is relevant to the credibility of Plaintiff's claimed damages. All remaining allegations and inferences are otherwise denied.

**28.** *Federal common law principles of agency apply to TBCC violations, and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller.*

**ANSWER:** Paragraph 28 states a legal conclusion to which no response is required. Defendant refers the Court to the cited cases. Defendant denies any violation occurred and denies the existence of an unlawful agency relationship on these facts. All remaining allegations and inferences are otherwise denied.

**29.** *The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.*

**ANSWER:** Paragraph 29 states a legal conclusion to which no response is required. Defendant refers the Court to the statute and denies any violation of § 302.101. Defendant specifically denies that any alleged failure to register constitutes more than a single violation.

**30.** *Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 'is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17' and is enforceable as such.*

**ANSWER:** Paragraph 30 states a legal conclusion to which no response is required. Defendant refers the Court to the statute and denies any violation. All remaining allegations and inferences are otherwise denied.

**31.** *The use or employment by any person of a false, misleading, or deceptive act or practice causes 'economic damages or damages for mental anguish.' Tex. Bus. & Com. Code § 17.50.*

**ANSWER:** Paragraph 31 states a legal conclusion to which no response is required. Defendant refers the Court to the statute and denies any false, misleading, or deceptive act or practice. All remaining allegations and inferences are otherwise denied.

**TEXAS BUSINESS AND COMMERCE CODE § 305.053**

**32.** *A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication for damages. Tex. Bus. & Com. Code § 305.053(a)(2).*

**ANSWER:** Paragraph 32 states a legal conclusion to which no response is required. Defendant refers the Court to the statute and denies any violation. All remaining allegations and inferences are otherwise denied.

**33.** *A plaintiff who prevails in an action for damages under this section is entitled to the greater of $500 for each violation or the plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(b)(1-2).*

**ANSWER:** Paragraph 33 states a legal conclusion to which no response is required. Defendant refers the Court to the statute and prevailing court interpretation. All remaining allegations and inferences are otherwise denied.

**34.** *The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. & Com. Code § 305.055.*

**ANSWER:** Paragraph 34 states a legal conclusion to which no response is required. Defendant refers the Court to the statute. Defendant affirmatively notes that this allegation confirms Plaintiff is a repeat litigant under these statutes, which is relevant to the credibility of Plaintiff's claimed actual damages. All remaining allegations and inferences are otherwise denied.

## FACTUAL ALLEGATIONS

**35.** *Plaintiff successfully registered his phone number on the National Do Not Call registry ("NDNC") on December 11, 2007.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff registered his number on the NDNC on December 11, 2007, and demands strict proof thereof on that basis. Defendant reserves the right to verify this allegation through discovery. All remaining allegations and inferences are otherwise denied.

**36.** *Plaintiff never removed his phone number from the NDNC.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 36, and demands strict proof on that basis. All remaining allegations and inferences are otherwise denied.

**37.** *Defendant offers home warranty service in Texas and throughout the nation.*

**ANSWER:** Admitted.

**38.** *Plaintiff never inquired about Defendant's services or gave Defendant permission to call or text Plaintiff.*

**ANSWER:** Denied. Defendant affirmatively states that on or about March 25, 2026, a webform inquiry for a home warranty quote was submitted through Defendant's website using the name 'Brandon callier,' the email address 'callier74@gmail.com,' and the telephone number '915-383-XXXX' [Redacted for public filing] - the same identifying information Plaintiff uses in this action. This submission required e-sign acceptance of opt-in with prior express consent verbiage clearly stated giving consent to be contacted by Defendant regarding home warranty services. This consent became business record of the Defendant and is associated with all calls to the Plaintiff until revocation by the Plaintiff. All remaining allegations and inferences are otherwise denied.

**39.** *On March 25, 2026, at 1:24 PM, Plaintiff received a phone call that displayed 305-851-7800 on Plaintiff's caller identification. Plaintiff answered the phone call, and the solicitor stated, 'This is JP from Select Home Warranty.'*

**ANSWER:** Defendant admits that a call was placed to the telephone number 915-383-XXXX [Redacted for public filing] on or about March 25, 2026, and that a representative of Defendant identified himself in connection with SHW. Defendant denies that the call was unlawful or unauthorized, and denies any remaining allegations of Paragraph 39 not expressly admitted.

**40.** *Plaintiff asked JP if he had previously spoken to him. JP responded, 'No.'*

**ANSWER:** Defendant denies the allegations of Paragraph 40 as stated. Defendant does not dispute that SHW's representative had not previously spoken with the individual who submitted the webform inquiry and provided the name 'Brandon callier,' the email address callier74@gmail.com, and the telephone number 915-383-XXXX [Redacted for public filing] on the web form.

**41.** *Plaintiff had not previously spoken to JP or inquired about Defendant's services.*

**ANSWER:** Denied. Defendant affirmatively states that a webform inquiry was submitted through Defendant's website on March 25, 2026, using Plaintiff's identifying information, which constituted a prior inquiry regarding Defendant's services regardless of whether the same individual had previously spoken with a particular representative. All remaining allegations and inferences are otherwise denied.

**42.** *JP, without a request from Plaintiff, immediately sent Plaintiff two solicitation text messages.*

**ANSWER:** Defendant admits that text messages were sent to the telephone number associated with the webform lead following the March 25, 2026 call. Defendant denies that the text messages were unauthorized or unlawful, and affirmatively states that they were sent in follow-up to the webform inquiry submitted using Plaintiff's identifying information.

**43.** *Plaintiff was at work and ended the call.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43, and demands strict proof thereof. All remaining allegations and inferences are otherwise denied.

**44.** *On March 25, 2025 [sic], at 2:21 PM, Plaintiff reviewed the texts and verified that the texts and calls were indeed from Defendant. Plaintiff immediately sent a Do Not Call Request to Defendant's attorney.*

**ANSWER:** Defendant admits that a communication was received from or on behalf of Plaintiff on or about March 25, 2026, directing a do-not-call request to Defendant's counsel. Defendant notes that Paragraph 44 contains an apparent typographical error referencing the year 2025, and assumes 2026. Defendant denies the remaining allegations of Paragraph 44 to the extent they imply unlawful conduct.

**45.** *On March 26, 2026, at 10:39 AM, Plaintiff sent a DNC request to Defendant.*

**ANSWER:** Defendant admits that a do-not-call request was received from Plaintiff on or about March 26, 2026. All remaining allegations and inferences are otherwise denied.

**46.** *On March 26, 2026, at 10:40 AM, Defendant sent Plaintiff an email stating, 'Thank you for your email. Your case# is 03942411,' acknowledging receipt of Plaintiff's DNC request.*

**ANSWER:** Defendant admits the allegations of Paragraph 46.

**47.** *On March 27, 2026, Plaintiff sent Defendant's attorney another email informing him of continued solicitation calls.*

**ANSWER:** Defendant admits that a communication was received on or about March 27, 2026 from Plaintiff referencing continued contacts. Defendant denies that any contacts made were unlawful.

**48.** *On March 27, 2026, at 11:47 AM, Plaintiff sent another email to Defendant informing Defendant that the solicitation calls were continuing.*

**ANSWER:** Defendant admits that a communication was received from Plaintiff on or about March 27, 2026. Defendant admits that a safe harbor time period exists under FCC regulation pursuant to the TCPA, and Defendant operated within that safe harbor time period on DNC request revocation and removal. Defendant denies that any contacts were unlawful.

**49.** *On March 27, 2026, at 11:47 AM, Defendant sent Plaintiff an email stating, 'Thank you for your email. Your case# is 03943676,' acknowledging receipt of Plaintiff's DNC request.*

**ANSWER:** Defendant admits the allegations of Paragraph 49. All remaining allegations and inferences are otherwise denied.

**50.** *On March 27, 2026, at 1:06 PM, Plaintiff received a phone call that displayed 646-631-7764 on Plaintiff's caller identification. Plaintiff answered the phone call, and a robotic prerecorded voice began to play, stating, 'Hi, this is Jill with Select Home Warranty. I saw you recently requested a quote. Your zip code is one of our best-covered areas right now.'*

**ANSWER:** Defendant admits that a call using a prerecorded or automated voice message was placed to the telephone number associated with the webform inquiry on or about March 27, 2026. Defendant denies that such call was unlawful or unauthorized, and affirmatively states that the call was placed in follow-up to the quote request submitted through Defendant's website on March 25, 2026, using Plaintiff's identifying information. Defendant denies the remaining allegations of Paragraph 50 to the extent they imply unauthorized or unlawful conduct.

**51. ALLEGATION:** *Plaintiff has never, at any time, requested information for a quote from Defendant.*

**ANSWER:** Denied.

**52.** *Plaintiff purchased a home warranty product with Defendant as proof that it was, in fact, Defendant who had called Plaintiff.*

**ANSWER:** Defendant admits that a home warranty policy was sold to a caller using Plaintiff's identifying information on or about March 27, 2026. The price of the policy was $428 USD for warranty coverage of selected white electrics and household appliances for service and support in his zip code. Plaintiff elected to pay the annual policy by credit card. Defendant affirmatively states that the purchase was made voluntarily by the individual on the call, who provided credit card information to complete the transaction and expressed interest in the policy before purchasing. All remaining allegations and inferences are otherwise denied.

**53.** *Defendant charged Plaintiff's credit card $428. The charge read 'Select Home Warranty,' confirming the call's origin.*

**ANSWER:** Defendant admits that a charge of $428 was processed on or about March 27, 2026, and that such charge was associated with a home warranty policy purchase. Defendant denies the characterization that this 'confirms' unlawful conduct, and affirmatively states that the purchase was the result of a voluntary transaction initiated following the webform inquiry. All remaining allegations and inferences are otherwise denied.

**54.** *During the purchase phone call, the agent stated, 'We called you because you had inquired a couple of days ago for your home in Brooklyn.'*

**ANSWER:** Defendant admits that during the purchase call, a reference was made to a prior inquiry. Defendant affirmatively states that the webform inquiry submitted on March 25, 2026 contained zip code 11229, that was manually entered by Plaintiff, corresponding to Brooklyn, New York, which is the information upon which Defendant's representative relied. Defendant denies any remaining allegations of Paragraph 54 to the extent they imply unlawful conduct.

**55.** *Plaintiff informed Defendant's agent that he does not live in Brooklyn.*

**ANSWER:** Defendant admits that the individual on the call stated that he did not in fact reside in Brooklyn, and Defendant's agent corrected the Defendant's inbound inquiry record at that time. Defendant affirmatively states that this disclosure is consistent with the possibility that someone other than Plaintiff may have submitted the webform inquiry using Plaintiff's identifying information, or that Plaintiff submitted an inquiry using an incorrect zip code, which is a factual matter to be resolved through discovery. All remaining allegations and inferences are otherwise denied.

**56.** *On March 27, 2026, at 2:05 PM, Plaintiff emailed Defendant requesting that the policy be cancelled, the payment refunded, and that another DNC request be delivered.*

**ANSWER:** Defendant admits that a refund and cancellation request was received on or about March 27, 2026, and that Defendant honored that request and processed a refund of the $428 charge. Defendant admits the remaining allegations of Paragraph 56. All remaining allegations and inferences are otherwise denied.

**57.** *Each of the phone calls in this case was a solicitation phone call selling home warranty products and services.*

**ANSWER:** Denied as stated. Defendant affirmatively states that all calls made prior to Plaintiff's DNC request were made in follow-up to a webform quote inquiry submitted using Plaintiff's identifying information. The calls were therefore responses to a consumer inquiry, not unsolicited solicitations. All remaining allegations and inferences are otherwise denied.

**58.** *Plaintiff did not give Defendant consent to send any of these prerecorded messages.*

**ANSWER:** Denied.

**59.** *Table A displays each of the phone calls received by Plaintiff from Defendant, comprising 13 contacts between March 25 and March 30, 2026.*

**ANSWER:** Defendant admits that multiple contacts were made to the telephone number associated with the webform inquiry between March 25 and March 30, 2026. Defendant denies that all contacts identified in Table A were violative of any statute. Defendant specifically denies that text messages sent prior to Plaintiff's DNC request were unlawful, and affirmatively states that all contacts were made in follow-up to a consented-to webform inquiry. All remaining allegations and inferences are otherwise denied.

**60.** *On March 29, 2026, Plaintiff searched the Texas Secretary of State telephone solicitation registration website and did not find a valid Texas telephone solicitation registration.*

**ANSWER:** Defendant admits that it was not registered as a telephone solicitor with the Texas Secretary of State at the time relevant to this action. Defendant denies that registration was required

under the circumstances of this case for the reasons set forth in the Affirmative Defenses below which are herein incorporated into this Answer. All remaining allegations and inferences are otherwise denied.

**61.** *Defendant has never been registered to solicit in Texas.*

**ANSWER:** Defendant admits it has not maintained a registration under Texas Business and Commerce Code Chapter 302. Defendant denies that such registration was required in this instance and denies that any failure to register constitutes a per-call violation. All remaining allegations and inferences are otherwise denied.

**62.** *Defendant made each of the calls in Texas without being registered to telephone solicit.*

**ANSWER:** Defendant admits that calls were placed to a telephone number associated with a Texas area code. Defendant denies that registration was required for the reasons set forth in the Affirmative Defenses, which are herein incorporated into this Answer, and specifically denies that each call constitutes a separate violation of § 302.101. All remaining allegations and inferences are otherwise denied.

**63.** *Defendant did not provide Plaintiff with a contract to review prior to making a purchase.*

**ANSWER:** Defendant denies the allegations of Paragraph 63 to the extent they imply a violation of applicable law. Defendant affirmatively states that the purchase transaction was conducted by telephone with the individual's voluntary agreement and credit card authorization, and that all

required disclosures were made during the call. All remaining allegations and inferences are otherwise denied.

**64.** *Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.*

**ANSWER:** Denied. Defendant denies that Plaintiff suffered any cognizable injury to data storage capacity as a result of contacts made in response to a webform inquiry submitted using Plaintiff's own identifying information.

**65.** *No emergency necessitated the calls.*

**ANSWER:** Admitted. All remaining allegations and inferences are otherwise denied.

## INJURY, HARM, AND DAMAGES AS A RESULT OF THE CALLS

**66.** *Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a 'nuisance and invasion of privacy.'*

**ANSWER:** Denied.

**67.** *Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.*

**ANSWER:** Denied.

**68. ALLEGATION:** *Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.*

**ANSWER:** Denied.

**69.** *Plaintiff has been harmed, injured, and damaged by the calls, including reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.*

**ANSWER:** Denied.

**70.** *Plaintiff incurred increased electric bills as a result of more frequent charging of his cell phone related to the unauthorized phone calls.*

**ANSWER:** Denied.

## COUNT ONE: NON-EMERGENCY PRERECORDED CALL TO CELLULAR TELEPHONES, 47 U.S.C. § 227(b)(1)(A)(iii)

**71.** *Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1–70.*

**ANSWER:** Defendant incorporates by reference its responses to paragraphs 1–70 as if fully set forth herein.

**72.** *The foregoing acts and omissions of Defendant and/or their affiliates or agent constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making non-emergency telemarketing ATDS texts to Plaintiff's cellular telephone numbers without his prior express written consent.*

**ANSWER:** Denied. Defendant denies that it violated 47 U.S.C. § 227(b)(1)(A)(iii). Defendant affirmatively states that: (1) prior express consent was obtained through a webform inquiry submitted using Plaintiff's identifying information; (2) the dialing system used to contact Plaintiff does not constitute an automatic telephone dialing system as defined by 47 U.S.C. § 227(a)(1) under *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), because calls were placed from a stored list

of consented leads rather than using a random or sequential number generator; and (3) to the extent any prerecorded message was delivered, it was in response to the prior inquiry.

**73.** *Plaintiff was statutorily damaged at least one (1) time under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.*

**ANSWER:** Denied.

**74.** *Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damages amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.*

**ANSWER:** Denied. Defendant denies any violation, willful or otherwise, of 47 U.S.C. § 227(b).

## COUNT TWO: VIOLATIONS OF TEXAS BUSINESS AND COMMERCE CODE § 305.053 PRERECORDED PHONE CALLS IN VIOLATION OF 47 U.S.C. § 227(b)

**75.** *Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1–74.*

**ANSWER:** Defendant incorporates by reference its responses to paragraphs 1–74 as if fully set forth herein.

**76.** *Defendant placed at least one (1) prerecorded phone call to Plaintiff in violation of 47 U.S.C. § 227(b).*

**ANSWER:** Denied. Defendant denies that any prerecorded call was placed in violation of 47 U.S.C. § 227(b). Defendant admits that a call using a prerecorded voice message was placed on March 27, 2026, but affirmatively states that such call was made in response to a prior webform

inquiry submitted with the prior written express consent of the person who submitted that inquiry. All remaining allegations and inferences are otherwise denied.

**77.** *A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates that communication. Tex. Bus. Com. Code § 305.053.*

**ANSWER:** Paragraph 77 states a legal conclusion to which no response is required. Defendant refers the Court to the statute. Defendant denies any violation.

**78.** *Plaintiff was statutorily damaged at least one (1) time under 47 U.S.C. § 227(b)(3)(B) by Defendant by the telephone calls described above, in the amount of $500.00 per call. Tex. Bus. Com. Code § 305.053(b)(1).*

**ANSWER:** Denied. Because Defendant committed no violation of 47 U.S.C. § 227(b), Plaintiff is not entitled to any damages under TBCC § 305.053 on this count. All remaining allegations and inferences are otherwise denied.

**79.** *If the court finds that the defendant committed the violation knowingly or intentionally, the court may increase the amount of the award of damages under Subsection (b) to not more than the greater of $1,500 for each violation. Tex. Bus. Com. Code § 305.053(c)(1).*

**ANSWER:** Paragraph 79 states a legal conclusion to which no response is required. Defendant denies any violation, willful or otherwise, and denies any entitlement to enhanced damages. All remaining allegations, speculation, and inferences are otherwise denied.

**80.** *The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. Com. Code § 305.055.*

**ANSWER:** Paragraph 80 states a legal conclusion to which no response is required. Defendant refers the Court to the statute. All remaining allegations and inferences are otherwise denied.

**COUNT THREE: VIOLATION OF THE TCPA 'SALES CALL/DNC' PROHIBITION, 47 U.S.C. § 227(c), AND 47 C.F.R. § 64.1200(C)**

**81. ALLEGATION:** *Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1–80.*

**ANSWER:** Defendant incorporates by reference its responses to paragraphs 1 to 80 (inclusive of its answers to Counts I and II) as if fully set forth herein.

**82. ALLEGATION:** *The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).*

**ANSWER:** Denied. Defendant affirmatively states that the contacts in this case were made in response to a webform inquiry submitted using Plaintiff's identifying information, establishing an inquiry-based established business relationship (EBR) that exempts such calls from the NDNC prohibition under 47 C.F.R. § 64.1200(c)(2)(ii). The EBR window is 18 months from the date of

inquiry. Additionally, Plaintiff voluntarily completed a purchase on March 27, 2026, further cementing the EBR. All remaining allegations and inferences are otherwise denied.

**83.** *Defendant solicitation calls and text messages to Plaintiff's private residential telephone number, which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the automated text messages, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).*

**ANSWER:** Denied. Defendant affirmatively asserts the established business relationship exemption under 47 C.F.R. § 64.1200(c)(2)(ii) based on the webform inquiry submitted March 25, 2026. Defendant further denies the characterization that Plaintiff's number is a 'private residential telephone number' in the context of NDNC protections where the subscriber submitted a quote request. All remaining allegations and inferences are otherwise denied.

**84.** *Plaintiff was statutorily damaged at least thirteen (13) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the calls and text messages described above, in the amount of $500 per automated text message.*

**ANSWER:** Denied.

**85.** *Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).*

**ANSWER:** Denied.

**86.** *47 U.S.C. § 227(c)(5)(B).*

**ANSWER:** Paragraph 86 states a legal conclusion identifying a statutory provision to which no response is required. All remaining allegations and inferences are otherwise denied.

**87.** *Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).*

**ANSWER:** Denied. Defendant denies any violation, willful or otherwise, of 47 U.S.C. § 227(c), and denies any entitlement to treble or enhanced damages. All remaining allegations and inferences are otherwise denied.

**COUNT FOUR: VIOLATIONS OF TEXAS BUSINESS AND COMMERCE CODE § 305.053 SOLICITATION PHONE CALLS IN VIOLATION OF 47 U.S.C. § 227(c)**

**88.** *Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1–87.*

**ANSWER:** Defendant incorporates by reference its responses to paragraphs 1 to 87 (inclusive of its answers to Counts I, II, and III) as if fully set forth herein.

**89.** *Defendant placed at least thirteen (13) solicitation phone calls to Plaintiff's cellular telephone, which was registered on the National Do Not Call Registry for more than 31 days prior to receipt of the first phone call, in violation of 47 U.S.C. § 227(c).*

**ANSWER:** Denied. Defendant denies any violation of 47 U.S.C. § 227(c). Defendant affirmatively states the EBR exemption and consent defenses set forth above in response to Count Three, which are incorporated herein by reference.

**90.** *A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates that communication. Tex. Bus. Com. Code § 305.053.*

**ANSWER:** Paragraph 90 states a legal conclusion to which no response is required. Defendant denies any violation. All remaining allegations and inferences are otherwise denied.

**91. ALLEGATION:** *Plaintiff was statutorily damaged at least twelve (12) times under 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2) by Defendant by the telephone calls described above, in the amount of $500.00 per call. Tex. Bus. Com. Code § 305.053(b)(1).*

**ANSWER:** Denied. Defendant notes that Paragraph 91 asserts twelve (12) violations while Paragraph 84 asserts thirteen (13) violations for the same conduct; Plaintiff is put to strict proof as to his precise number of alleged actionable communications. Defendant denies all violations and all entitlement to damages. All remaining allegations and inferences are otherwise denied.

**92.** *If the court finds that the defendant committed the violation knowingly or intentionally, the court may increase the amount of the award of damages under Subsection (b) to not more than the greater of $1,500 for each violation. Tex. Bus. Com. Code § 305.053(c)(1).*

**ANSWER:** Paragraph 92 states a legal conclusion to which no response is required. Defendant denies any violation, willful or otherwise. All remaining allegations and inferences are otherwise denied.

**93.** *The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. Com. Code § 305.055.*

**ANSWER:** Paragraph 93 states a legal conclusion to which no response is required. All remaining allegations and inferences are otherwise denied.

## COUNT FIVE: VIOLATIONS OF TEXAS BUSINESS AND COMMERCE CODE § 302.101 FAILURE TO REGISTER FOR TELEPHONE SOLICITATION

**94.** *Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1–93.*

**ANSWER:** Defendant incorporates by reference its responses to paragraphs 1 to 93 (inclusive of tis answers to Counts I, II, III, and IV) as if fully set forth herein.

**95.** *The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making thirteen (13) non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.*

**ANSWER:** Denied. Defendant denies any violation of TBCC § 302.101 for multiple, independently sufficient reasons: (1) the contacts at issue were made in response to a consumer webform inquiry submitted using Plaintiff's identifying information; calls made in response to a consumer's own expressed request are not 'telephone solicitations initiated by a seller' within the meaning of TBCC § 302.001(7), as the consumer, not the seller, initiated the commercial transaction; (2) the Texas Secretary of State and Attorney General have officially confirmed that consent-based communications are not subject to Chapter 302's registration requirement, following *Ecommerce Marketers Alliance, Inc. v. Texas, No*. 1:25-cv-1401 (W.D. Tex. 2025), applicable to all contacts post-September 1, 2025; (3) any alleged failure to register constitutes a single status violation, not a separate per-call violation; and (4) the § 302.058 current customer exemption applies to contacts made after Plaintiff's voluntary March 27, 2026 purchase.

**96. ALLEGATION:** *Plaintiff is entitled to an award of up to $5,000 in damages for each such violation. Texas Business and Commerce Code 302.302(a).*

**ANSWER:** Denied. Defendant denies any violation of TBCC § 302.101, and therefore denies any entitlement to damages thereunder. Defendant further denies that any alleged failure to register constitutes a separate per-call violation, and asserts that any such failure, if established, would constitute a single violation. All remaining allegations and inferences are otherwise denied.

**97. ALLEGATION:** *Plaintiff is entitled to an award of all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Texas Business and Commerce Code 302.302(d).*

**ANSWER:** Denied. Defendant denies any violation and therefore denies any entitlement to fees, costs, or expenses. All remaining allegations and inferences are otherwise denied.

**WHEREFORE**, Defendant having Answered the Complaint, it prays that the Court enters an order of judgment in favor of Defendant wherein the Plaintiff takes nothing under Count I to V of the Complaint for failures to state a claim under which recovery can be obtained, and failure to state a claim beyond claims recoverable by Plaintiff, or otherwise deny or dismiss the claims and that, Plaintiff pays Defendant's costs, including attorney fees relevant to each claim, or any relief it deems necessary, as a part of such order; and grant such other and further relief as the Court deems just and proper. Defendant further prays for costs, including attorney fees relevant to meritorious affirmative defenses, or any relief it deems necessary, as a part of such order. The Defendant specifically prays that the Court

1.) dismiss the entirety of the Complaint with prejudice and enter judgment in Defendant's favor on all counts;
2.) deny all statutory, compensatory, treble, and enhanced damages sought by Plaintiff;
3.) award Defendant its costs and attorneys' fees to the extent permitted by applicable law; and
4.) grant Defendant such other and further relief as the Court deems just and proper.

## DEFENDANT'S AFFIRAMATIVE DEFENSES

Defendant asserts the following defenses, each as separate and distinct defenses to Plaintiffs' alleged causes of action. Insofar as any of the following expresses denial of an element of any claim alleged against Defendant, such expression does not indicate that Plaintiff is relieved of their burden to prove each and every element of any such claim or

that Defendant has assumed any burden of proof. Defendant demands **JURY TRIAL** on the following AFFIRMATIVE DEFENSES:

## ALTERNATIVE FACTS COMMON TO AFFIRMATIVE DEFENSES

**1.** On March 25, 2026, at approximately 2:24 P.M., a webform inquiry for a home warranty quote was submitted through Defendant's website by a person who entered the name "Brandon Callier," the email address callier74@gmail.com, and the telephone number 915-383-XXXX—the identical identifying information Plaintiff uses in this action—along with zip code 11229, corresponding to Brooklyn, New York, thereby initiating the commercial transaction that gave rise to all subsequent contacts at issue.

**2.** Defendant's call logs reflect that a follow-up attempt was made to the telephone number provided in the webform submission on March 25, 2026, at approximately 3:27 P.M., which post-dates the 2:24 P.M. webform submission, and no call was placed to Plaintiff's number in the absence of that prior consumer inquiry, including telephone system logs, carrier records, and webform submission metadata.

**3.** On March 27, 2026, the individual associated with the webform lead, the Plaintiff, voluntarily answered Defendant's follow-up call, expressed interest in purchasing a home warranty policy, was transferred to an internal sales agent, affirmatively agreed to the terms of a home warranty plan, and voluntarily provided his credit card information to fund a $428.00 purchase, conduct that constitutes express consent to and engagement with the very communications Plaintiff now characterizes as unwanted.

**4.** During the March 27, 2026 purchase call, Defendant's sales agent stated, "We called you because you had inquired a couple of days ago for your home in Brooklyn," and when the caller disclosed that he did not reside in Brooklyn, Defendant's agent relied in good faith on

the zip code 11229 that had been submitted through the webform, conduct consistent with a company responding in good faith to a first-party consumer inquiry rather than initiating an unsolicited cold call.

**5.** All contacts to the telephone number 915-383-XXXX were placed through Defendant's customer relationship management and lead-follow-up system, which dials from a stored list of leads who have submitted inquiries through Defendant's first-party website, and does not use a random or sequential number generator to store or produce telephone numbers to be called, and therefore does not constitute an automatic telephone dialing system within the meaning of 47 U.S.C. § 227(a)(1) as interpreted by the Supreme Court in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021).

**6.** At all times relevant to this action, Defendant maintained written TCPA compliance policies and procedures governing the handling of first-party webform leads, including protocols for consent capture, lead verification, and do-not-call list scrubbing, and Defendant's representatives acted consistently with those procedures in placing follow-up contacts on a lead bearing the consumer's own name, email address, and telephone number, such that any technical violation, which Defendant denies, was not willful or knowing.

**7.** Because all contacts at issue occurred after September 1, 2025, the effective date of Texas S.B. 140, and because those contacts were made in response to a consumer webform inquiry constituting prior consent, the Texas Secretary of State and Attorney General have officially confirmed, in the settlement reached in *Ecommerce Marketers Alliance, Inc. v. Texas*, No. 1:25-cv-1401 (W.D. Tex. 2025), that businesses placing calls or sending texts to consumers who have provided prior consent are not required to register under Texas Business and

Commerce Code Chapter 302, and therefore Defendant's alleged failure to maintain a registration certificate does not constitute a violation of § 302.101 on these facts.

**8.** Even if Defendant's failure to hold a Texas telephone solicitation registration certificate constituted a violation of Texas Business and Commerce Code § 302.101, that failure constitutes a single status violation, namely the act of operating without the required certificate, and not a separate $5,000 violation for each of the thirteen contacts alleged in Table A of the Complaint, because neither the text of § 302.101, the structure of Chapter 302, nor the legislative history of the statute supports the theory that each individual call or text message sent without registration is an independently actionable violation carrying its own statutory penalty.

## AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative defenses without assuming any burden of proof that would otherwise rest with Plaintiff, and reserves the right to amend or supplement these defenses as discovery progresses.

### FIRST AFFIRMATIVE DEFENSE.
### <u>Prior Express Consent</u>

Plaintiff's claims under 47 U.S.C. §§ 227(b) and 227(c), and derivatively under TBCC §§ 302.101 and 305.053, are barred in whole or in part because the person using Plaintiff's identifying information provided prior express consent to be contacted by Defendant. On or about March 25, 2026, a webform inquiry for a home warranty quote was submitted through Defendant's website bearing the name Brandon Callier, the email address callier74@gmail.com, and the telephone number 915-383-XXXX, the same identifying information Plaintiff uses in this action. This submission constituted prior express consent to receive follow-up calls and texts from Defendant

regarding home warranty services. All contacts at issue were made in direct response to that inquiry.

WHEREFORE, Defendant prays that the Court enters an order of judgment in favor of the Defendant wherein the Plaintiff's claims are barred and he takes nothing, or any damages awarded are set off by the prior expressed consent given under prevailing rules, and/or law concerning the alleged communication claims. and any other relief it deems necessary, as a part of such order.

## SECOND AFFIRMATIVE DEFENSE.

**Responses to Consumer Inquiry, No Telephone Solicitations**

Plaintiff's claims under TBCC Chapter 302, including Count Five, are barred because the contacts at issue were not 'telephone solicitations' within the meaning of TBCC § 302.001(7). That provision defines a telephone solicitation as a call or transmission 'initiated by a seller or salesperson to induce a person to purchase' an item. Here, the commercial transaction was initiated by the consumer's webform submission, not by Defendant. Defendant's contacts were follow-up responses to that expressed request. A seller responding to a consumer's own solicitation for a quote does not 'initiate' a telephone solicitation. Chapter 301 of the same Code expressly excludes from its requirements calls 'made in response to the express request of the consumer,' Tex. Bus. & Com. Code § 301.051(a)(1), reflecting the legislature's understanding that seller-initiated and consumer-initiated contacts are fundamentally different. Chapter 302 should be interpreted consistently.

WHEREFORE, Defendant prays that the Court enters an order of judgment in favor of the Defendant wherein the Plaintiff's claims are barred under TBCC Chapter 302 exceptions and he takes nothing, or any damages awarded are set off by prevailing rules, and/or law concerning the

alleged communication claims under Chapter 302, and any other relief it deems necessary, as a part of such order.

**THIRD AFFIRMATIVE DEFENSE.**
**Consent-Based Contacts Exempt Under Law and Interpretation**

Plaintiff's claims under TBCC Chapter 302 are further barred by the official position of the Texas Secretary of State and Texas Attorney General, as confirmed in the settlement in *Ecommerce Marketers Alliance, Inc. v. Texas*, No. 1:25-cv-1401 (W.D. Tex. 2025), that businesses sending communications to consumers who have provided prior consent are not required to register under Chapter 302. Texas S.B. 140, effective September 1, 2025, amended Chapter 302 to incorporate the definition of 'telephone call' from TBCC § 304.002, which expressly excludes 'a transmission made to a mobile telephone number... in connection with which the telephone service customer has agreed with the service provider to receive the transmission.' All contacts at issue occurred after September 1, 2025. Because Plaintiff (or the person using Plaintiff's identifying information) consented through the webform submission, the contacts are categorically excluded from Chapter 302's scope, and no registration was required.

WHEREFORE**,** Defendant prays that the Court enters an order of judgment in favor of the Defendant wherein the Plaintiff's claims are barred under TBCC Chapter 302 exceptions and he takes nothing, or any damages awarded are set off by prevailing rules, and/or law concerning the alleged communication claims under Chapter 302, and any other relief it deems necessary, as a part of such order.

**FOURTH AFFIRMATIVE DEFENSE.**
**Established Business Relationship Exemption**

Plaintiff's claims under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) are barred by the established business relationship exemption. Under 47 C.F.R. § 64.1200(c)(2)(ii), the NDNC

prohibition does not apply where the consumer has made an inquiry to the seller, which establishes an EBR for a period of eighteen (18) months. On March 25, 2026, an inquiry was submitted through Defendant's website using Plaintiff's identifying information. All contacts at issue were made within days of that inquiry and thus well within the 18-month EBR window. The EBR was further reinforced by Plaintiff's voluntary completion of a purchase transaction on March 27, 2026, which itself establishes an EBR for an additional time under applicable FCC regulations.

WHEREFORE**,** Defendant prays that the Court enters an order of judgment in favor of the Defendant wherein the Plaintiff's claims are barred under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) exceptions and he takes nothing, or any damages awarded are set off by prevailing rules, and/or law concerning the alleged communication claims under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2), and any other relief it deems necessary, as a part of such order.

WHEREFORE**,** Defendant prays that the Court enters an order of judgment in favor of the Defendant wherein the Plaintiff's claims are barred under TBCC Chapter 302 exceptions and he takes nothing, or any damages awarded are set off by prevailing rules, and/or law concerning the alleged communication claims under Chapter 302, and any other relief it deems necessary, as a part of such order.

**FIFTH AFFIRMATIVE DEFENSE.**
**Consent by Voluntary Purchase and Engagement**

Plaintiff's claims are barred in whole or in part by the doctrine of consent. On March 27, 2026, the individual associated with this matter voluntarily answered Defendant's call, expressed interest in purchasing a home warranty, was transferred to an internal sales agent, affirmatively agreed to purchase a policy, and voluntarily provided his credit card information to fund the purchase. This voluntary engagement, occurring after any alleged DNC request was submitted, constitutes

consent and/or waiver with respect to the call during which the purchase was made, and demonstrates the absence of any cognizable harm to the interests the TCPA was designed to protect.

WHEREFORE, Defendant prays that the Court enters an order of judgment in favor of the Defendant wherein the Plaintiff's DNC claims are barred as exceptions under the TCPA and federal regulation and he takes nothing, or any damages awarded are set off by prevailing rules, and/or law concerning the alleged communication claims, and any other relief it deems necessary, as a part of such order.

**SIXTH AFFIRMATIVE DEFENSE.**
**No ATDS to support statutory TCPA claims**

Plaintiff's claims under 47 U.S.C. § 227(b)(1)(A)(iii) are barred because the dialing system used by Defendant does not constitute an 'automatic telephone dialing system' (ATDS) as defined by 47 U.S.C. § 227(a)(1) under the Supreme Court's holding in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021). An ATDS must use a random or sequential number generator to store or produce numbers to be called. Defendant's system places calls from a stored list of leads who have submitted inquiries through Defendant's webform, not from randomly or sequentially generated numbers. List-based dialing from consented leads does not satisfy the Duguid ATDS standard.

WHEREFORE, Defendant prays that the Court enters an order of judgment in favor of the Defendant wherein the Plaintiff's TCPA claims are barred under 47 U.S.C. § 227(a)(1) and interpretation consistent with the Supreme Court's holding in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021) and accordingly no ATDS was used by the Defendant and he takes nothing, or any damages awarded are set off by prevailing rules, and/or law concerning the alleged communication claims under the TCPA, and any other relief it deems necessary, as a part of such order.

## SEVENTH AFFIRMATIVE DEFENSE.
**Good Faith Compliance, No Willful or Knowing Violation**

Even if any violation is established (which Defendant denies), Plaintiff is not entitled to treble or enhanced damages under 47 U.S.C. §§ 227(b)(3)(C) or 227(c)(5), or under TBCC § 305.053(c), because Defendant acted in good faith and in reasonable reliance on consent obtained through a first-party webform inquiry bearing Plaintiff's identifying information. Defendant had no reason to know that the webform submission was not made by Plaintiff. Defendant maintained written TCPA compliance procedures and acted consistently with those procedures in placing follow-up calls on a first-party lead, herein attached and incorporated into this Affirmative Defense under Answer Exhibit A. No willful or knowing violation occurred.

## EIGHTH AFFIRMATIVE DEFENSE.
**DNC Recognized Regulatory Grace Period**

Some or all contacts following Plaintiff's do-not-call request were made within the permissible regulatory processing period under 47 C.F.R. § 64.1200(d)(3), which prescribes companies with a reasonable time, up to thirty (30) days, to implement internal Do-Not-Call (DNC) requests. Plaintiff's first DNC communication was directed to Defendant's counsel on March 25, 2026, and to Defendant directly on March 26, 2026. Contacts that post-date the DNC request but fall within the processing window are not actionable.

WHEREFORE**,** Defendant prays that the Court enters an order of judgment in favor of the Defendant wherein the Plaintiff’s TCPA claims are barred under 47 C.F.R. § 64.1200(d)(3) as they are alleged to have, and occurred within the recognized grace period afforded by regulation, and the Plaintiff takes nothing, or any damages awarded are set off by prevailing rules, and/or law

concerning the alleged communication claims under DNC regulations or the TCPA, and any other relief it deems necessary, as a part of such order.

**NINTH AFFIRMATIVE DEFENSE.**
**<u>§ 302.101 Single Violation, Not Per-Call</u>**

To the extent Defendant's failure to hold a Texas telephone solicitation registration certificate constitutes any violation of TBCC § 302.101 (which Defendant denies), such failure constitutes a single status violation, the act of operating without a registration certificate, and not a separate violation for each individual call or text message sent. Plaintiff's Prayer for Relief seeks to multiply this single alleged status failure by the number of contacts to generate up to $65,000 in exposure. Neither the text of § 302.101, nor the legislative history of Chapter 302, supports the theory that each contact made without registration is an independent violation carrying its own $5,000 penalty.

WHEREFORE**,** Defendant prays that the Court enters an order of judgment in favor of the Defendant wherein the Plaintiff's claims are barred under TBCC Chapter 302, or damages are limited to a single status violation and any damages awarded are set off by prevailing rules, and/or law concerning the alleged activity under Chapter 302, and any other relief it deems necessary, as a part of such order.

**TENTH AFFIRMATIVE DEFENSE.**
**<u>§ 302.058 Current Customer Exemption</u>**

Plaintiff's claims under Chapter 302 are barred as to contacts made on or after March 27, 2026 by the current customer exemption under TBCC § 302.058. On March 27, 2026, Plaintiff (or the person using Plaintiff's identifying information) voluntarily purchased a home warranty policy from Defendant, becoming a current customer. Section 302.058 exempts from Chapter

302 the solicitation of current or former customers. Any contacts occurring after the purchase are categorically exempt from Chapter 302's requirements.

WHEREFORE, Defendant prays that the Court enters an order of judgment in favor of the Defendant wherein the Plaintiff's claims are barred under TBCC § 302.058 exception and any damages awarded are set off by prevailing rules, and/or law concerning the alleged communication claims under TBCC § 302.058, and any other relief it deems necessary, as a part of such order.

## ELEVENTH AFFIRMATIVE DEFENSE.
## Failure to Mitigate

Plaintiff failed to mitigate his alleged damages. Rather than taking reasonable steps to avoid further contact, Plaintiff voluntarily answered calls, engaged in a full sales conversation, and purchased a home warranty policy on March 27, 2026, all after submitting DNC requests. Plaintiff's voluntary engagement extended the course of conduct from which he now seeks to recover damages.

WHEREFORE, Defendant prays that the Court enters an order of judgment in favor of the Defendant wherein the Plaintiff's claims are barred or limited under the doctrine of failure to mitigate damages and any award is set off by such failure by the Plaintiff and the Court award Defendant any other relief it deems necessary, as a part of such order.

## TWELFTH AFFIRMATIVE DEFENSE.
## No Concrete Injury-in-Fact

Plaintiff lacks Article III standing to assert some or all of his claims because he has not suffered a concrete and particularized injury-in-fact that is fairly traceable to Defendant's conduct. The alleged injuries, "reduced device storage, reduced data plan usage, increased electricity costs, anger, and frustration," arising from calls made in response to a webform inquiry he submitted

using Plaintiff's own identifying information do not constitute the type of harm Congress sought to prevent through the TCPA, and do not satisfy the injury requirement of *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

**THIRTEENTH AFFIRMATIVE DEFENSE.**
**Federal Preemption of State Registration Requirement**

To the extent TBCC § 302.101's registration requirement imposes obligations on interstate telephone solicitation that are inconsistent with, or exceed the requirements of, the TCPA, 47 U.S.C. § 227 et seq., such state law requirements are preempted in whole or in part by federal law. Defendant preserves this defense pending further development of preemption doctrine in this Circuit.

WHEREFORE**,** Defendant prays that the Court enters an order of judgment in favor of the Defendant wherein the Plaintiff's claims are barred to the extent that the TBCC § 302.101's registration requirement in this instance imposes obligations on interstate telephone solicitation that are inconsistent with, or exceed the requirements of, the TCPA, 47 U.S.C. § 227 et seq., and any damage award is set off by such inconsistencies and the Court award Defendant any other relief it deems necessary, as a part of such order.

**FOURTEENTH AFFIRMATIVE DEFENSE.**
**Waiver And Equitable Estoppel**

Defendant avoids liability, or its liability is subject to set-off, because Plaintiff, has waived their right to recover against Defendant, in whole or in part, and/or their claims are otherwise barred by estoppel. By conduct, representations, and omissions, upon which Defendant relied to its detriment, Plaintiff is equitably estopped from asserting any claim for relief against it.

WHEREFORE, Defendant prays that the Court enters an order of judgment wherein the Plaintiff takes no punitive damages for intentional conduct, as to the Plaintiff, or his alleged class members, have waived their right to recover against Defendant or are otherwise estopped under prevailing law and Plaintiff pays Defendant's costs, including attorney fees relevant to this claim, or any relief it deems necessary, as a part of such order.

**Reservation of Additional Defenses**

Defendant reserves the right to assert such other and additional affirmative defenses as may become apparent through investigation, discovery, or the development of the record in this matter. The assertion of any defense herein does not constitute an admission that Defendant bears the burden of proof on such defense.

Respectfully submitted,

**GORDON DAVIS JOHNSON SHANE & SNIDER P.C.**
4695 N. Mesa St.
El Paso, TX 79912
(915) 545-1133
(915) 545-4433 (Fax)

By: ______________________________
John M. Dickey
Texas State Bar No. 00783963
Counsel for Defendant Select Home Warranty LLC

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2026, a true and correct copy of the foregoing was served upon Plaintiff Brandon Callier, Pro Se, via the Court's CM/ECF system.

**John M. Dickey**